<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JAMANE BARBER,                                :
                                             : Civil Action No. 08-4936 (FLW)
          Plaintiff,               :
                                             :
                                             :
          v.                       :        **OPINION**
                                             :
WARDEN CHARLES ELLIS, et al.,                 :
                                             :
          Defendants.              :

**WOLFSON**, District Judge

Presently before the Court is a Motion for Summary Judgment by Defendant, Rakesh Agarwal, M.D. ("Defendant," "Defendant Agarwal," "Dr. Agarwal"). The underlying case relates to an ankle injury sustained by *pro se* Plaintiff Jamane Barber ("Plaintiff") while he was incarcerated at the Mercer County Correction Center ("MCCC") and his allegations that Defendant was deliberately indifferent to his medical condition. Defendant contends that summary judgment should be granted on the improper medical care claim because as a matter of law, Dr. Agarwal was not deliberately indifferent to Plaintiff's health. For the reasons set forth below, the Court will grant Defendant's motion for summary judgment and dismiss Plaintiff's claim against Defendant Rakesh Agarwal. The Court will also *sua sponte* dismiss the claim against Defendant Warden Charles Ellis.

## I. FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiff as the non-moving party, the following are the facts of this case. On July 24, 2008, Plaintiff, then an inmate at Mercer County Correctional Center,

injured his ankle while climbing down from the top bunk in his cell. (Docket Entry No. 5, Pl.'s Am. Compl. 6.) Plaintiff was seen by a nurse for this injury who then subsequently referred him to a doctor. (*Id.*) An x-ray of Plaintiff's ankle was ordered and said x-ray was reviewed by Dr. Shmueli, a radiologist not named in this suit. (Agarwal Aff. ¶6.) According to Dr. Shmueli's reading, Plaintiff fractured the distal one-third of his right fibula, a non-weight bearing bone. (*Id.*) Dr. Agarwal informed Plaintiff of the results of Dr. Shmueli's reading and treated Plaintiff's injury according to that diagnosis. (*Id.* at ¶¶ 7-9.) Plaintiff continued to complain of pain and thereafter, on August 22, 2008, Dr. Agarwal referred Plaintiff to an orthopedic surgeon at Lawrence Orthopedics. (*Id.* at ¶ 11.) The orthopedic surgeon found that the lateral and medial malleoli of Plaintiff's right ankle were fractured and scheduled Plaintiff for immediate surgery. (*Id.*) On or about August 24, 2008, the orthopedic surgeon performed surgery on Plaintiff's ankle and Plaintiff returned to the infirmary at the MCCC for recovery. (*Id.*) On October 6, 2008, Plaintiff filed the instant action. (Docket Entry No. 1.)

## II.  PROCEDURAL HISTORY

After he initially filed his complaint in October of 2008, the Court subsequently denied Plaintiff's application to proceed *in forma pauperis* and the action was administratively terminated. (Docket Entry No. 2.) Plaintiff submitted a revised *in forma pauperis* application, which the Court granted, however, at the same time, the Court dismissed Plaintiff's Complaint for failure to meet the Rule 8 standard. (Docket Entry No. 4.) The Court allowed Plaintiff an opportunity to amend his Complaint which Plaintiff did on December 31, 2008. (Docket Entry No. 5.) Plaintiff's Amended Complaint contains claims against Dr. Agarwal and the Warden of the MCCC, Charles Ellis. (*Id.*) Specifically, Plaintiff alleges the following against Defendant Agarwal:

> Defendant [Dr. Agarwal] deliberately showed that he was
> unconcerned with [his] welfare by rejecting [*sic*] to give [his] broken
> ankle the proper diagnoses [*sic*] required stating that is was not a
> serious medical condition, for three weeks Defendant misled [him] to
> believe that [he] was suffering from a bad sprang [*sic*] Defendant
> knowingly put [him] in harm by stating that the pain and swelling was
> normal in those cases Therefore [he] was forced to walk on [his]
> ankle without support further damaging [his] ankle even after given
> [*sic*] the Defendant the level of pain [he] was suffering [his] request
> to be sent to the emergency room was denied.

(Pl.'s Am. Compl. 5.)

Both Dr. Agarwal and Charles Ellis filed an Answer to Plaintiff's Complaint and the Court entered a scheduling order. (Docket Entry No. 14.)  Pursuant to the scheduling order, all discovery was to be completed by September 4, 2009 and summary judgment motions must have been filed by October 9, 2009. (*Id.*)  On May 28, 2009, Defendant issued interrogatories and requests for admission to Plaintiff.  By July 13, 2009, Plaintiff had not responded, so Defendant requested and received permission from the Court to file a motion to dismiss for failure to comply with discovery. On July 24, 2009, Defendant Agarwal filed a Motion to Dismiss Plaintiff's Complaint for failure to respond to discovery.  (Docket Entry No. 16.)  On October 5, 2009, the Court denied Defendant's Motion to Dismiss without prejudice and ordered Plaintiff to respond to the outstanding discovery requests no later than October 30, 2009.  (Docket Entry No. 19.)  The Court permitted Defendant Agarwal to renew his Motion to Dismiss if Plaintiff did not comply by October 30th.  (*Id.*)  On October 9, 2009, Defendant Agarwal filed his motion for summary judgment against Plaintiff. (Docket Entry No. 20.)  Plaintiff filed "opposition" to the motion on November 23, 2009, stating only that summary judgment should be denied because discovery is not yet complete; however at no time has Plaintiff sought to re-open discovery (Docket Entry No. 24.)  Also on November 23, 2009,

Plaintiff belatedly filed his responses to Defendant's outstanding discovery requests. (Docket Entry

No. 25.) Plaintiff included interrogatories and documents requests for Defendant with his responses,

although by order of the Court, discovery was closed. (*Id.*) On December 11, 2009, Defendant filed

his reply to Plaintiff's opposition. (Docket Entry No. 27.)

## III.  COURT'S ANALYSIS - CLAIM AGAINST DR. RAKESH AGARWAL

### A. Summary Judgment

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the

facts in the light most favorable to the non-moving party, the moving party is entitled to judgment

as a matter of law." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 482 n. 1 (3d Cir.2001) (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *accord Fed.R.Civ.P.* 55(c).  For an issue to be

genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the

non-moving party." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir.2006); *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material

fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the

light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir.2002).  For a fact to be material,

it must have the ability to "affect the outcome of the suit under governing law." *Kaucher*, 455 F.3d

at 423.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue

of material fact. *Celotex Corp.*, 477 U.S. at 323.  Once the moving party has met this burden, the

nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a

genuine issue for trial. *Id.*; *Maidenbaum v. Bally's Park Place, Inc.*, 870 F.Supp. 1254, 1258

(D.N.J.1994).   Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or ... vague statements...'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs.*, 982 F.2d 884, 890 (3d Cir.1992) (quoting *Quiroga v. Hasbro*, Inc., 934 F.2d 497, 500 (3d Cir.1991)).  Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). Indeed, the plain language of Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.  Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.  Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992).

If a non-movant fails to oppose the motion, Rule 56(e) **provides that the Court may only grant the motion for summary judgment "if appropriate." *See, e.g., Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir.1990); *Damiano v. Sony Music Entm't*, 975 F.Supp. 623, 627 (D.N.J.1996) (granting summary judgment because defendant's argument was unopposed, and thus no genuine issue of material fact was created).  The motion is appropriately granted when the movant is entitled to judgment as a matter of law. *Anchorage Assocs.*, 922 F.2d at 175. When "the non-moving party fails to oppose the motion for summary**

judgment by written objection, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support." *Carp v. IRS*, No. 00-5992, 2002 WL 373448, at * 2 (D.N.J. January 28, 2002) (quoting *Anchorage Assocs.*, 922 F.2d at 175). Even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." *Morris Orman*, No. 87-5149, 1989 WL 17549, at * 8 (E.D.Pa. March 1, 1989) (*citing Childers v. Joseph*, 842 F.2d 689 (3d Cir.1988)); *see also Atkinson v. City of Phila.*, No. 99-1541, 2000 WL 793193, at * 5 n. 8 (E.D.Pa. June 20, 2000), aff'd, 281 F.3d 218 (3d Cir. 2001).

In this case, Plaintiff did not file any substantive opposition to Defendant's motion. Rather, Plaintiff submitted a letter to the Court stating that "discovery has not yet been completed [and] therefore summary judgment is premature at this time." (Docket Entry No. 24, "Pl.'s Opp." at 1.) Though Plaintiff did not submit an affidavit, *pro se* filings must be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652; *Gambrell v. Hess*, 777 F.Supp. 375, 378 (D.N.J. 1991), and as such, the Court will interpret Plaintiff's letter as attempting to set forth the need for discovery pursuant to Fed.R.Civ.P. 56(f).

Even if the Court treats Plaintiff's letter as an affidavit, *Hancock Industries v. Schaeffer*, 811 F.2d 225, 230 (3d Cir.1987), and construes it liberally in light of Plaintiff's *pro se* status, it still does not satisfy the requirements of Fed.R.Civ.P. 56(f).   *See Dowling v. City of Philadelphia*, 855 F.2d 136 (3d. Cir. 1988).  Specifically, Plaintiff's letter does not state what particular information is sought; how, if uncovered, it would preclude summary judgment;

and why it has not previously been obtained.  *Id.* at 139-140.  In addition, since filing his complaint almost two years ago, Plaintiff failed to answer any of Defendant's discovery requests or make any requests of his own until recently.[1]  More specifically, pursuant to the scheduling order in place, discovery concluded on September 4, 2009.  (Docket Entry No. 14.) Plaintiff did not ask the Court for an extension of that deadline nor did he make any attempt to have discovery completed by that time.  Nonetheless, on October 5, 2009, the Court entered an order denying Defendant's motion to dismiss for failure to comply with discovery (Docket Entry No. 19) and instead ordered Plaintiff to answer all outstanding discovery no later than October 30, 2009.  (*Id.*)  Plaintiff failed to comply with that deadline.  On November 23, 2009, approximately one month past the October 30th deadline and more than two and a half months past the original discovery deadline, Plaintiff answered Defendant's requests for admission and interrogatories, while simultaneously serving interrogatories and documents requests of his own on Defendant.  (Docket Entry No. 25.)  Plaintiff has not at any time provided this Court with an explanation for his failure to comply with the deadlines, nor has he sought leave to propound discovery requests.

---

[1]On November 2, 2009, Plaintiff submitted a letter to the Court stating among other things that he is "writing in regards to the medical records my defendants have brought froward [*sic*].  Those documents are with out [*sic*] a boubt [*sic*] fabricated in every sense .  Also they never produced my medical records from of [*sic*] the hospitols [*sic*] I was treated."  (Docket Entry No. 23.)  Though it is not clear to the Court whether Plaintiff ever previously requested the records referenced in his letter, it is clear that as of the filing of this letter, Plaintiff did have in his possession the records submitted by Defendant in support of his motion for summary judgment. As such, Plaintiff had ample time within which to determine what discovery was needed by him to adequately oppose summary judgment.  However, Plaintiff failed to do so.

Therefore, the Court finds that if there is still discovery outstanding which Plaintiff believes is necessary for him to adequately oppose Defendant's motion for summary judgment, it is only still outstanding because of Plaintiff's failure to seek said discovery within the allotted discovery period. *See Harris v. Terhune*, 2002 WL 538565 at *2 (3d Cir. April 11, 2002).  Even if the Court were to re-open discovery, Plaintiff has failed to identify what discovery he seeks to oppose the summary judgment motion and therefore it would be a waste of the parties' and the Court's time to do so.  Further, as discussed in more detail below, because it is clear from the record that Plaintiff did receive prompt medical care for his injury and he is simply unhappy with the treatment, which does not amount to a claim under the Eighth Amendment, it would be an exercise in futility to permit additional discovery.  As such, the Court does not find that Defendant's motion should be dismissed without prejudice until further discovery can be sought and the Court will consider the merits of the motion at this juncture.

B.  Section 1983 - Denial of Medical Care

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

Thus, to state a claim for relief under §1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged

deprivation was committed or caused by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Plaintiff is alleging that he was denied proper medical care in violation of his constitutional rights.  It is not clear from the Complaint or subsequent filings whether Plaintiff was a convicted prisoner or a pretrial detainee at the time of the incident.  Since the applicable standard depends upon Plaintiff's classification, the Court will evaluate Defendant's summary judgment motion under both scenarios.

1.  Pre-Trial Detainees

For pretrial detainees, denial of medical care claims are considered under the due process clause of the Fourteenth Amendment, rather than the Eighth Amendment.  *See City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 243-45 (1983)(holding that the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, controls the issue of whether prison officials must provide medical care to those confined in jail awaiting trial); *Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005); *Fuentes v. Wagner*, 206 F.3d 335, 341 n.9 (3d Cir.), cert. denied, 531 U.S. 821 (2000); *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 n.31 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988). Specifically, while "'the due process rights of a [pre-trial detainee] are *at least* as great as the Eighth Amendment protections available to a convicted prisoner,' *Hubbard*, 399 F.3d at 166 (citation omitted), the proper standard for examining such claims is the standard set forth in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *i.e.,* whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to an adjudication of guilt." *Montgomery v. Ray*, 2005 WL 1995084 at *1 (3d Cir. August

19, 2005).  In *Hubbard*, the Third Circuit clarified that the Eighth Amendment standard only acts as a floor for due process inquiries into medical and non-medical conditions of pretrial detainees.  399 F.3d at 165-67.

Plaintiff  is alleging that he was denied proper medical care for his ankle injury after he fell from the top bunk.  However, Plaintiff acknowledges that he was seen by a nurse for his injury the morning after his injury.  He confirms that two days later, he was seen by Defendant Agarwal and despite Dr. Agarwal's belief that the ankle was not broken, he still sent Plaintiff for an x-ray.  Plaintiff also confirmed that after the x-ray came back from the radiologist, Dr. Agarwal informed Plaintiff that the radiologist found a fracture of a non-weight bearing bone (the distal one-third of his right fibula) and Dr. Agarwal ordered follow-up care pursuant to this determination by the radiologist.  Plaintiff states that he asked multiple times to go to the emergency room and those requests were denied, however,  there are no allegations of inaction or refusal to treat plaintiff that could be deemed excessive in relation to any stated purpose of jail security and administration, and accordingly, a court cannot infer that defendants' actions or inactions were intended as punishment and retaliation. *See Hubbard*, 399 F.3d at 158-63; *Newkirk v. Sheers*, 834 F. Supp. 772, 781 (E.D.Pa. 1993).

Therefore, the Court finds that though he did not directly address the Fourteenth Amendment in his papers, the sworn testimony put forth by Defendant Agarwal meets his burden to establish that there is no genuine issue of material fact under this standard.  Plaintiff has failed to identify any facts that contradict Defendant's showing and as such, the Court finds that Defendant Agarwal is entitled to summary judgment as to Plaintiff's claim against him using the Fourteenth Amendment standard.

**2.  Convicted Prisoner - Eighth Amendment**

To the extent that Plaintiff was actually a convicted prisoner at the time of the accident, Plaintiff's  denial of medical care claim falls under the Eighth Amendment standard.  The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Rouse v. Plantier*, 182 F.3d 192 (3d Cir. 1999).  In order to succeed on a claim for a violation of his right to adequate medical care, an inmate must show:  (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  *Estelle*, 429 U.S. at 106; *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate that his medical needs are serious.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations omitted); *see also Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the *Estelle* test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. *See Natale*, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *Andrews v. Camden County*, 95 F. Supp.2d 217, 228 (D.N.J. 2000); *Peterson v. Davis*, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. *Estelle*, 429 U.S. at 105-06; *White*, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment.  *See Rouse*, 182 F.3d at 197.  The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment.  *Atkinson*, 316 F.3d at 266.  *See also Monmouth County Correctional Institutional Inmates*, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); *Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993); *White v. Napoleon*, 897 F.2d 103 (3d Cir. 1990).

In this case, it is clear that Plaintiff had a serious medical need.  However, Plaintiff must also meet the second prong of the *Estelle* test and Defendant Agarwal has met his burden to demonstrate the absence of a genuine issue of material fact regarding deliberate indifference. Defendant Agarwal argues that Plaintiff has not put forth any evidence that he was deliberately indifferent to his injury and without said evidence, Plaintiff cannot establish that Defendant Agarwal violated Plaintiff's Eight Amendment rights.  (Def.'s Br. 7-8.)  The Court agrees. Specifically, according to Dr. Agarwal's affidavit, he saw Dr. Shmueli's report, which identified a distal fibula fracture and he treated Plaintiff according to that report.  (Agrwal Aff. ¶¶ 6-10.) Dr. Agarwal did not have any reason to question the report issued by Dr. Shmueli and in his medical judgment, his treatment of Plaintiff was appropriate for the fracture described in Dr.

Shmueli's report.  (*Id.*)  Plaintiff does not refute any of these statements by Dr. Agarwal with

affidavits or other evidence.[2]

By Plaintiff's own admission in his Complaint and November 2nd letter, Dr. Agarwal

treated his injury and had several follow-up visits with him.  However, Plaintiff did not agree

with the  treatment dispensed by Dr. Agarwal.  At the time he was treating Plaintiff's ankle

injury, Dr. Agarwal was proceeding according to the results reported by the radiologist, Dr.

Shmueli, who concluded that Plaintiff's injury was a fracture of a non-weight bearing bone in

the ankle.  Plaintiff's difference of opinion as to how he should have been treated does not rise

to the level of a constitutional deprivation.  Indeed, as discussed above, a prisoner's subjective

dissatisfaction with his medical care does not in itself indicate deliberate indifference. *Andrew*s,

95 F. Supp.2d at 228.  Moreover, to the extent that Plaintiff is seeking damages for the medical

treatment by Dr. Agarwal or for the initial diagnosis of the injury as a fracture of the distal

fibula, such claim sounds only in negligence or medical malpractice, and thus, is not actionable

under § 1983 as an Eighth Amendment violation.  *See Estelle*, 429 U.S. at 105-06; *White*, 897

F.3d at 110.

Therefore, the Court finds that under the Eighth Amendment standard, Defendant

Agarwal has met his burden to establish that there is no genuine issue of material fact.  Plaintiff

---

[2]In his November 2, 2009 letter to the Court, Plaintiff stated that "all thy've [*sic*] done was cover up there [*sic*] medical negligence by changing dates, names and even medication...I was never sent to a medical unit after my departure from being housed in a medical room.  I was sent to a unit which doesn't care for the disabled and because of that I was caught up in numerous fights further damaging my right ankle...As many times I was seen by [Dr. Agarwal] and still he never once took into consideration of [*sic*] me going to the hospitol [*sic*] even after given [*sic*] Dr. Rakesh Agarwal the level of pain I was in." (Docket Entry No. 23.)  However, none of these statements, which were not included in his "Opposition" or Complaint, are sufficient to show deliberate indifference.  Rather, as stated by Plaintiff himself, these allegations more accurately fall under a claim for negligence.

has failed to identify any facts that contradict Defendant's showing and as such, the Court finds

that Defendant Agarwal is entitled to summary judgment as to Plaintiff's claim against him

under the Eighth Amendment.

IV.  COURT'S ANALYSIS - CLAIM AGAINST WARDEN CHARLES ELLIS

Though Defendant Charles Ellis has not filed a formal motion to dismiss the claim

against him for failure to state a claim, the Court finds that the claim against him must be

dismissed *sua sponte* pursuant to FED. R. CIV. P. 12(b)(6). A district court may on its own

initiative enter an order dismissing the action provided that the complaint affords a sufficient

basis for the court's action. *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980);

*see also Michaels v. State of N.J.*

955 F.Supp. 315, 331 (D.N.J. 1996) ("It is well established that, even if a party does not make

a formal motion to dismiss, the court may, *sua sponte,* dismiss the complaint where the

inadequacy of the complaint is clear.")

When reviewing a motion to dismiss on the pleadings, courts "accept all factual

allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008) (citation and

quotations omitted). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167

L.Ed.2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court

"retired" the language contained in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d

80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *Id.* at 1968 (quoting *Conley*, 355 U.S. at 45-46). Instead, the factual

allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 S.Ct. at 1965).

In affirming that *Twombly* standards apply to all motions to dismiss, the Supreme Court recently explained the principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir.2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S.Ct. at 1950. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211.

Where, as here, the plaintiff is *pro se*, the court must take care to construe the complaint liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Id.* ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers ....") (internal quotation marks omitted). Nevertheless, "a litigant is not absolved from complying with *Twombly* and the federal pleading

16

requirements merely because s/he proceeds *pro se*." *Thakar v. Tan*, 2010 WL 1141397, \*2 (3d Cir. Mar.25, 2010).

In his Complaint, Plaintiff alleges that Ellis was "totally unconcerned with his general doctor's deliberate indifference to [Plaintiff's] broken ankle ignoring [Plaintiff's] grievance forms showed that he actually wished [Plaintiff] harm failing to ensure that [Plaintiff] received adequate medical care to [Plaintiff's] broken ankle." (Pl.'s Am. Compl. 3.)  The only allegation against Defendant Ellis is that he failed to respond to grievances submitted to him by Plaintiff regarding the medical care he was receiving.  However, a non-physician cannot be considered deliberately indifferent simply because he failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.  *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir.1993).

Moreover, to the extent that Plaintiff is seeking to hold Defendant Ellis liable for the actions of Dr. Agarwal, the law is clear that *respondeat superior* is  not an acceptable basis for liability under § 1983.  *Id.*  (citing *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981)).  Since Plaintiff's complaint acknowledges that Plaintiff was receiving medical care from the prison doctors and in light of the Court's findings with respect to the claim against Dr. Agarwal, Plaintiff cannot state a claim for deliberate indifference against Defendant Ellis.  Therefore, the Court will *sua sponte* dismiss said claim pursuant to FED. R. CIV. P. 12(b)(6).

**V. CONCLUSION**

18

For the foregoing reasons, Defendant Agarwal's Motion for Summary Judgment is granted.  The Court will also *sua sponte* dismiss the claim against Defendant Charles Ellis pursuant to FED. R. CIV. P. 12(b)(6).   An appropriate Order follows.


Dated: <u>June 21,  2010</u>


 s/Freda L. Wolfson
FREDA L. WOLFSON, U.S.D.J.
